**No. 26691**

**Levitt Multihousing Corporation, a Delaware corporation v. District Court of El Paso County, Fourth Judicial District, Division 3, George M. Gibson, Judge**

(534 P.2d 1207)

Decided May 5, 1975.

Cole, Hecox, Tolley, Edwards & Hero, Lawrence A. Hecox, for petitioner.

Bledsoe, Smith, Cathcart, Boyd & Eliot, Lawrence G. Lossing; Grant, Shafroth, Toll and McHendrie, P.C., Douglas McHendrie, James E. Brown, for respondent.

Weller, Friedrich, Hickisch and Hazlitt, John R. Hickisch; Anderson, McPharlin & Conners, G. Wayne Murphy, David T. DiBiase, for Commercial Standard Insurance Company, amicus curiae.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

This is an original proceeding by Levitt Multihousing Corporation (hereinafter referred to as either Levitt or plaintiff) which petitions for a writ in the nature of prohibition. Plaintiff alleges the respondent district court has exceeded its jurisdiction in permitting T.I.T.S. Development Corporation to file a counterclaim contrary to the statutes of Colorado and the full faith and credit clause — *U.S. Const.,* art. IV, § 1.

The essential facts are not in dispute. Levitt, as prime contractor, and the Development Company (hereinafter referred to as defendant), as subcontractor, entered into a construction contract for work to be performed in Colorado Springs. The same parties in the same relationship were involved in construction work in Phoenix, Arizona.

Alleging breach resulting in substantial damages, Levitt brought suit here against the defendant on the Colorado contract. After answering, the defendant moved for leave to file a coun-

terclaim against Levitt, seeking damages against Levitt for alleged violation of the Arizona contract. The trial court granted the motion despite a showing that the defendant failed to comply with the statutory requirements to qualify to do business as a foreign corporation in either Colorado or in Arizona. Furthermore, the defendant went out of business and did not pay the annual franchise tax to its home incorporation state of California, thus placing itself under suspension there. We issued a rule to the trial court to show cause why the counterclaim should not be stricken as being not within the jurisdiction of the Colorado court. We make the rule absolute.

### I.

Levitt argues that to allow the filing of the counterclaim would be a denial by the Colorado court of full faith and credit to the laws of both California and Arizona. Both states deny access to their state courts for affirmative action if a corporation fails to comply with statutory requirements precedent to lawfully doing business. Additionally California General Corporations Code, section 5901(a), takes away all of the suspended corporation's "corporate rights, privileges, and powers" specifically providing that the corporate powers cannot be "exercised for any purpose or in any manner." From its language and case law from several jurisdictions, Levitt argues that the deprivation of defendant's corporate powers leaves it lifeless and unable to sue in California or elsewhere or engage in any pursuits.

We need not, however, meet the full faith and credit argument since the defendant has failed to obtain a certificate of authority in Colorado and cannot maintain its action in this state.

### II.

Section 7-9-103, C.R.S. 1973, provides *inter alia:*

*"Transacting business without certificate of authority.* (1) No foreign corporation transacting business in this state without a certificate of authority nor anyone in its behalf shall be permitted to maintain any action, suit, or proceeding in any court of this state until such corporation has obtained a certificate of authority.

"(2) The failure of a foreign corporation to obtain a certificate of authority to transact business in this state shall not impair the validity of any contract or act of the corporation and shall not prevent

such corporation from defending any action, suit, or proceeding in any court of this state . . . .''

We adopt Levitt's argument that ''any action, suit, or proceeding'' includes the defendant's counterclaim.

The provisions of section 7-9-103 are mandatory and must be complied with if a foreign corporation *institutes* an action based on its doing business in Colorado. *King Copper Co. v. Dreher,* 68 Colo. 554, 191 P. 98 (1920). Otherwise a non-qualifying foreign corporation, which had flaunted our laws, would receive state sanction for its disregard thereof. A counterclaim is just as much an affirmative action as is an original complaint which defendant could not prosecute in Colorado. To hold otherwise would permit action by indirection, which is directly prohibited.

Under C.R.C.P. 13(b), a permissive counterclaim (as distinguished from a compulsory counterclaim) is one ''against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.'' Such is the nature of defendant's claim on the Arizona construction contract. Statutes similar to ours do not permit these counterclaims. *American Ink Co. v. Riegel Sack Co.,* 79 Misc. 421, 140 N.Y.S. 107 (1913). This is because a permissive counterclaim is a separate and distinct claim, and its absence will not necessarily do injustice to the parties in the action currently before the court. *T.L. Smith Co. v. District Court,* 163 Colo. 444, 431 P.2d 454 (1967).

Section 7-9-103 has broad prohibitory language to deny non-qualifying foreign corporations access to our courts. Engrafted on is a single limited exception relating to defense. The precision in drafting convinces us that the confinement was intentional. Thus, in line with the trend of authority, we hold that section 7-9-103 does not allow the parasitic pendency of permissive counterclaims, for to do so would be fundamentally unfair to those domestic and foreign corporations which have submitted to qualifying impositions. Colorado can and does limit the use of its judicial facilities to those who adhere to its laws.

If any inequities occur from this construction they will result from the foreign corporation's own inactivity. Colorado law requires a foreign corporation to obtain a certificate of au-

thority before it may lawfully do business within the state. Section 7-9-101, C.R.S. 1973. Furthermore, the statute allows a formerly unqualified foreign corporation to rectify its status and so receive full access to our state courts. Section 7-9-103(3). If it chooses not to mitigate its error, any resulting hardship imposed by section 7-9-103 is self-inflicted.

We note th^t our ruling is not the strictest in the nation. Other jurisdictions with statutes apparently similar to ours disallow counterclaims of *any* nature. *Gibralter Construction & Engineering, Inc. v. State National Bank of Bethesda*, 265 Md. 530, 290 A.2d 789 (1972); *Bozzuto's Inc. v. Frank Kantrowitz & Sons, Inc.*, 117 N.J. Super. 146, 283 A.2d 907 (1971); *Bazan v. Kux Machine Co.*, 52 Wis.2d 325, 190 N.W.2d 521 (1971).

We also have before us an amicus curiae brief filed by Commercial Standard Insurance Company as performance bondsman for defendant. The issues raised have been answered by this opinion.

The rule is made absolute.